UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KIRBY TATE                                                             PETITIONER

V.                                               CIVIL ACTION NO. 4:06CV99 DPJ-FKB

JERRY PARKER                                            RESPONDENT

ORDER

This habeas petition is before the Court on the Report and Recommendation of Magistrate Judge James C. Sumner recommending the dismissal of Kirby Tate's petition as untimely.[1] Having fully considered the parties' submissions and the applicable law, the Court adopts the recommendation with one modification presented below.

I.     Facts/Procedural History

Kirby Tate was convicted by a jury in the Circuit Court of Lauderdale County of one count of delivery of marijuana and one count of possession of marijuana. At trial, the State's confidential informant Gerald Warren testified that Tate had delivered the drugs to him. Tate put on an entrapment defense, contending that Warren planted the marijuana in Tate's shed and then called Tate asking him to return the drugs. Tate asserts that he was returning the drugs when he was arrested and that the entire transaction was orchestrated by authorities. As discussed more thoroughly below, the State and Tate each argued at trial that the other had attempted to coerce Warren.

Tate filed his habeas petition on July 17, 2006. Since then, the matter has followed a long and convoluted path, as described in detail by both the undersigned [39, 47] and Judge

---

[1] Since entry of the Report and Recommendation, the case has been reassigned to Magistrate Judge F. Keith Ball.

Sumner [60]. Those descriptions are incorporated herein by reference. In short, the July 17, 2006 petition asserted eight grounds for relief. However, on October 16, 2006, Tate filed a supplemental petition [13], without leave, that added the following ninth ground for relief: "The Petitioner is actually innocent and can be proven so through the testimony of the States [sic] confidential informant." Suppl. Pet. [13] at 12. In describing this new ground for relief, Tate states that "Gerald Warren, the State's confidential informant and primary witness against the Petitioner at trial, confessed to Petitioner's attorney that he actually planted the drugs in the shed." *Id*. at 13. Tate goes on to assert in the supplemental petition that this new evidence supports his entrapment defense and therefore demonstrates actual innocence. *Id*. The supplemental petition does not attempt to link the new evidence to any new constitutional ground for relief other than Tate's purported actual innocence. After filing the supplemental petition, Tate contended that he had developed eight new pieces of evidence demonstrating actual innocence, including Warren's affidavit, a recording of Warren's interview with counsel, other affidavits, and Tate's own polygraph test results.

On March 21, 2007, the Court adopted an initial Report and Recommendation advocating the dismissal of the petition as untimely [26]. However, it became apparent that, due to Petitioner's ongoing supplementation, the magistrate judge had not been given the opportunity to consider the newly discovered evidence's impact on the timeliness of the petition. Accordingly, the case was remanded to Judge Sumner for the sole purpose of considering "Petitioner's claim that one or more of his claims fall under 28 U.S.C. § 2244(d)(1)(D)." Order [42] at 4. The parties thereafter provided supplemental memoranda, Judge Sumner again recommended dismissal [60], and Petitioner filed an objection [63].

II.     Analysis

This Court has already ruled that Tate's petition was untimely. The only issue presented is whether the new evidence tolls the limitations period. More precisely, the Court now considers whether new evidence (1) triggers the statutory limitations found in 28 U.S.C. § 2244(d)(1)(D) or (2) creates a basis for equitable tolling. The Court finds that Petitioner's new evidence does not establish a basis for statutory or equitable tolling.[2]

A.     Section 2244(d)(1)(D) Limitations Period

Although Tate cites eight pieces of new evidence, most of the items cannot be considered new, because the information was actually known to him, or at least available to him, even before the verdict. However, Tate has developed post-petition evidence suggesting that Warren now recants his trial testimony. This evidence comes in the form of two affidavits from Warren and a transcript of an interview upon which the affidavits were based. Warren's change of heart would not have been available to Tate at the time of trial, and the Court will consider whether this new evidence triggers statutory tolling under Section 2244(d)(1)(D). The statute provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> . . . .
> the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[2]Tate's counsel has demonstrated considerable zeal in investigating and arguing Tate's case, for which she should be commended. However, Tate's legal arguments have evolved to some extent with each successive memorandum and in some instances exceed the scope of the petition. This order makes no effort to address every issue raised in the submissions and instead focuses on those viewed most significant. All arguments have been considered and rejected.

The parties extensively briefed the issue following remand, and Judge Sumner again concluded that Tate's petition is time-barred and should be dismissed. The Court agrees.

Even assuming Warren's recanted testimony was not available at a much earlier date, it does not trigger a later limitations period. Section 2244(d)(1)(D) begins from the date on which the factual predicate *of the claim or claims presented* could have been discovered through the exercise of due diligence." (Emphasis added). Tate asserted the first eight grounds for relief in his original petition [1], which was filed before he knew about his new evidence. The factual predicates for the first eight grounds were known to Tate at trial or immediately after the verdict. Accordingly, the new evidence does not provide a "factual predicate" for any of his original eight claims.

The only new claim presented after he discovered this evidence is his claim of actual innocence found in Ground Nine of the supplemental petition. Significantly, Tate does not assert in his petition that the new evidence creates any basis for habeas relief other than its value in proving that he was actually innocent. *See* Suppl. Pet. [13] at 5-13. Actual innocence is not, however, a stand alone basis for relief. "In state criminal proceedings the trial is the paramount event for determining the guilt or innocence of the defendant." *Herrera v. Collins*, 506 U.S. 390, 416 (1993). Thus, "[c]laims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Id.* at 400. As a result, the new evidence fails to form the factual predicate for any cognizable claim reflected in the supplemental petition.

Finally, actual innocence does not trigger statutory tolling under § 2244(d) because the section provides no such language. Had Congress intended to create an actual innocence

4

exception in §2244(d), it could have provided language similar to that provided in 28 U.S.C. § 2244(b)(2)(B)(ii), dealing with successive habeas petitions.[3] Accordingly, the new evidence creates no statutory basis for tolling. *See, e.g.*, *David v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003) (finding no "statutory exception for actual innocence even though Congress clearly knew how to provide such an escape hatch"); *Gallow v. Rader*, No. 09-1127, 2009 WL 4432544, at *4 (W.D. La. Dec. 1, 2009) (finding "no exemption for a petitioner claiming actual innocence of the crimes for which they have been convicted" (citing *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002), *cert. denied*, 539 U.S. 918 (2003))).

    B.    Equitable Tolling[4]

The one-year limitations period found in "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, — S. Ct. —, 2010 WL 2346549, at *9 (June 14, 2010). An "appropriate case" is one involving "exceptional circumstances." *Id*.; *see also Felder v.*

---

[3]Section 2244(b)(2)(B) states in relevant part as follows:

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

    (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

    (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

[4]Tate has never presented his new evidence in state court. However, this procedural bar could be avoided if requiring exhaustion would result in a miscarriage of justice (because he is actually innocent). *House v. Bell*, 547 U.S. 518, 537-38 (2006); *Foster v. Thaler*, No. 09-70001, 2010 WL 924885, at *3 (5th Cir. Mar. 15, 2010).

5

*Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000) (equitable tolling limited to "rare and exceptional circumstances") (citing *Davis v. Johnson*, 158 F.3d 806, 807, 811 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999)). A mere "claim" of actual innocence does not constitute a "rare and exceptional" circumstance. *Id*. However, in *Felder* the Fifth Circuit left open the possibility that a "showing" of actual innocence might. *Id*. at n.8. Despite *Felder's* potential caveat, no Fifth Circuit opinion has employed it, and to date, there "is no precedent in this circuit whether actual innocence may equitably toll the statute of limitations." *Prince v. Thaler*, 354 F. App'x 846, 847 (5th Cir. 2009). The issue also remains unclear in many of the other federal circuits. *See, e.g.*, *Weaver v. Attorney Gen. of Mont.*, No. 08-36057, 2010 WL 892861, at *1 (9th Cir. Mar. 12, 2010) ("It is an open question in this circuit whether a showing of actual innocence can similarly excuse a failure to comply with AEDPA's one-year statute of limitations."); *Milton v. Sec'y, Dep't of Corr.*, 347 F. App'x 528, 530 (11th Cir. 2009) (avoiding the same open question).

Judge Sumner concluded that actual innocence does not create a basis for equitable tolling under § 2244(d), and there exists some support for the holding. *See, e.g.*, *Araujo v. Chandler*, 435 F.3d 678, 680 (7th Cir. 2005) (declining to toll based on actual innocence). However, this Court concludes that it should first determine whether Tate has demonstrated actual innocence. *Prince*, 354 F. App'x at 847 ("Because Prince has not made a showing of actual innocence, this court does not address the issue [of whether actual innocence equitably tolls §2244(d)(1)(D)]").

As stated, the only truly new evidence in this case surrounds Warren's post-trial repudiation of his trial testimony. Although actual innocence is not a stand-alone basis for relief, it can serve as a "gateway to defaulted claims" if it is established that, "in light of new evidence,

6

it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-37 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In *House*, the United States Supreme Court summarized *Schlup* and the parameters of review, noting that

> although "[t]o be credible" a gateway claim requires "new reliable evidence --whether it be exculpatory scientific evidence, ***trustworthy eyewitness accounts***, or critical physical evidence--that was not presented at trial," [*Schulp*] at 324, 115 S. Ct. 851, the habeas court's analysis is not limited to such evidence. . . . [W]hen considering an actual-innocence claim in the context of a request for an evidentiary hearing, the District Court need not "test the new evidence by a standard appropriate for deciding a motion for summary judgment," but rather may "consider how the timing of the submission ***and the likely credibility of the affiants*** bear on the probable reliability of that evidence." 513 U.S. at 331-332, 115 S. Ct. 851. . . . Schlup makes plain that the habeas court must consider "'all the evidence,'" old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under "rules of admissibility that would govern at trial." *See id.* at 327-328, 115 S. Ct. 851 (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)). Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." 513 U.S. at 329, 115 S. Ct. 851. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors. *Ibid*.
>
> . . . [I]t bears repeating that the *Schlup* standard is demanding and permits review only in the "'extraordinary'" case. *Id.* at 327, 115 S. Ct. 851 (quoting [*McCleskey v. Zant*, 499 U.S. 467,] 494 [(1991)]; *see also* [*Schlup*,] 513 U.S. at 324, 115 S. Ct. 851 (emphasizing that "in the vast majority of cases, claims of actual innocence are rarely successful"). At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.

*House*, 547 U.S. at 537-38 (emphasis added).

Warren's recanted testimony falls well short of this standard. First, Tate has always maintained that Warren entrapped him by planting the drugs on his premises. *See Tate v.*

7

*Mississippi*, 912 So. 2d 919, 924–25 (Miss. 2005). On cross-examination, Warren unequivocally testified, "I've never been to Kirby Tate's house. I do not know where Kirby Tate lives." Tr. Vol. 3 at 314. Warren's new version of the events, which comes several years after the fact, completely contradicts his sworn testimony. Recanted testimony is obviously suspect. *See Spence v. Johnson*, 80 F.3d 989, 1003 (5th Cir. 1996) ("[W]e reiterate that 'recanting affidavits and witnesses are viewed with extreme suspicion by the courts.'" (citation omitted)).

Second, the State and Tate each alleged during trial that the other was attempting to coerce Warren's trial testimony. In fact, the trial court noted that "[i]n my 25-year career on the bench, I don't think I've ever seen a case where there has been so much alleged--so many alleged threats or so much animosity expressed between the various witnesses and the supporters of each side in this case." *Tate*, 912 So. 2d at 929. Tate of course accused Warren of being coerced or bribed into entrapping him, while the trial court noted that Tate's witnesses "allegedly made a threat that [Warren] would be gunned down in the courthouse." *Id*. at 931. This backdrop of alleged threats, including the threat of death, significantly damages Warren's reliability.

Third, Warren's own daughter (approximately fourteen years old at the time of trial) offered to testify at trial and proffered that Warren regularly smoked marijuana in her presence and that he tried to prostitute her for drugs. *Id*. at 929.[5]

---

[5]Warren's daughter also proffered that Warren told her he was paid to plant the drugs at Tate's house. *Id*. Although ruled inadmissible, the daughter's testimony comes with its own set of credibility problems, as discussed in Respondent's memorandum. *See* Resp.'s Mem. [50] at 5-6.

8

Fourth, Warren testified that he had twice been admitted to a facility for his "nerves" in the seven months preceding Tate's arrest. Tr. Vol. 4 at 311.

Fifth, Tate's initial petition attacked Warren's credibility, noting that Warren testified that he was "high on oxycodone when the transaction in issue took place." Pet. [1] at 7; Suppl. Pet. [13] at 6. Tate's description of the testimony includes an element of spin, but it is certainly true that Warren was regularly taking hydrocodone and Lortab (synthetic morphine) in March 2003 when the relevant events transpired. Tr. Vol. 4. at 305. Tate also pled in his petition that "Warren had a reputation for violence . . . . Warren was also a known drug abuser who failed rehab at least one time." *Id*. Tate initially made these statements when trying to discredit Warren's trial testimony, but they remain reflective of Warren's credibility.

Sixth, according to Tate, Warren is illiterate, and the affidavit was prepared for him based on the recorded interview with Tate's counsel. Review of that interview reveals a witness with extreme difficulty understanding and answering questions. At times he seems cogent, while at other times he does not. Warren's erratic responses during the interview are perhaps understandable given his statement that, when interviewed, he was on his sixth day of a three-day morphine patch causing him to "bounc[e] like a fricken' basketball out in this street." Pet.'s Mem. [42], Ex. 1, Attach. 4, at 36. Finally, Warren spoke of a grand scheme by law enforcement to silence him and other witnesses. It is impossible to tell whether the claims are true or reflective of other mental issues. In any event, all of this leaves Warren with virtually no credibility.

As the trial court noted, this is not the common case. Rarely are there so many accusations between the parties of witness tampering, threats, coercion, and police misconduct.

Ultimately, the jury was asked to decide whether it believed Tate's version or the State's version of the events. The issue for this Court is whether Tate's evidence demonstrates actual innocense under *Schulp*. The recanted testimony of an individual with numerous credibility issues at the time of the subject transaction and at the time he recanted his sworn testimony is not sufficiently reliable to satisfy Tate's burden. *Schulp*, 513 U.S. at 324. It is certainly not on par with "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. . . ." *Schulp*, 513 U.S. at 324. As such, Tate has not met his burden of demonstrating "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 538.[6]

    C.    Resolved Issues

Lastly, Judge Sumner speaks to Tate's argument that he is entitled to statutory tolling due to a state-created impediment that prohibited him from filing his habeas petition within the one-year limitation period. This issue was addressed and rejected in the previous Report and Recommendation. Nevertheless, the bulk of Tate's objection to the Report and Recommendation is devoted to his argument that he is entitled to statutory tolling due to state-created impediments to filing, including various prison conditions, difficulties with mail, and episodes of lock-down for rule violations. As Judge Sumner noted, the impediment issue presents a closer question. Nevertheless, the undersigned agreed with and adopted Judge Sumner's analysis, which was consistent with Fifth Circuit precedent. As Judge Sumner noted

---

[6]The Court concludes that no hearing is necessary because this entire issue turns on Warren's credibility, which is beyond repair.

in his second Report and Recommendation, these issues have been decided, and this argument was not part of the limited remand now under consideration.[7]

As such, IT IS, THEREFORE, ORDERED that the Report and Recommendation of United States Magistrate Judge James C. Sumner be, and the same is hereby, adopted as the finding of this Court, and the same entire action should be dismissed with prejudice.

A separate judgment will be entered herein in accordance with the Order as required by Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 22nd day of June, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[7] In addition, with respect to Tate's objections, his arguments that prison officials have imposed onerous conditions since his habeas petition was remanded for limited reconsideration in 2007 does not create grounds for statutory tolling of the original petition, filed in 2006.